UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| SIERRA CLUB, <br><br> Plaintiff, <br><br>   v. <br><br> LOUISVILLE GAS & ELECTRIC CO., <br><br> Defendant. | Civil Action No. 3:14-cv-391-H <br><br><br> COMPLAINT <br> INJUNCTIVE RELIEF SOUGHT <br><br> *Electronically filed* |

## NATURE OF THE CASE

1. Plaintiff Sierra Club brings this citizen enforcement action against Defendant Louisville Gas & Electric Co. ("LG&E") for violations of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311 and 1342, by illegally discharging wastewater without authorization in a permit on an almost continuous, daily basis from the coal ash pond at the Mill Creek Generating Station ("Mill Creek Station") in Louisville, Kentucky. LG&E's permit for Mill Creek Station at most authorizes only an "occasional" discharge directly from the Mill Creek coal ash pond to the Ohio River. This complaint seeks a declaratory judgment that LG&E is violating the CWA at the Mill Creek Station, injunctive relief, and civil penalties.

## JURISDICTION AND VENUE

2. This action arises under the citizen suit provision of the CWA, 33 U.S.C. § 1365(a). This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and has jurisdiction over the parties. This Court may award Sierra Club declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

3. The CWA's citizen suit provision authorizes any affected citizen to commence a civil action against anyone "who is alleged to be in violation of…an effluent standard or limitation." 33

U.S.C. § 1365(a)(1). The term violation of "an effluent standard or limitation" means an unlawful act including any discharge of a pollutant without authorization in a National Pollutant Discharge Elimination System ("NPDES") permit. 33 U.S.C. §§ 1365(f), 1311(a), 1342. The CWA citizen suit provision, 33 U.S.C. § 1365(a), empowers the Court to enforce such an effluent standard or limitation and to impose any appropriate civil penalties under section 309(d) of the Act, 33 U.S.C. § 1319(d).

4. Sierra Club has provided LG&E with notice of the CWA violations alleged in this Complaint and of its intent to sue LG&E, as required by 33 U.S.C. § 1365(b)(1)(A). A copy of Sierra Club's notice letter is attached as Exhibit A. Sierra Club's notice letter was sent to LG&E and its registered agent on March 17, 2014. In addition to LG&E and its registered agent, Sierra Club sent copies of the notice letter to the Administrator and the Regional Administrator of the U.S. Environmental Protection Agency ("EPA") and to the Kentucky Department of Environmental Protection ("KDEP").

5. More than sixty days have passed since the notice letter was served, and, based on information and belief, the violations outlined in the notice and alleged in this Complaint are continuing at this time and are likely to persist.

6. Neither EPA nor KDEP has commenced an action or is diligently prosecuting a civil or criminal action to redress the asserted violations as described in 33 U.S.C. § 1365(b)(1)(B).

7. The Mill Creek Station is located in this judicial district and, therefore, venue in this judicial district is appropriate pursuant to 33 U.S.C. § 1365(c)(1).

## PARTIES

8. Plaintiff Sierra Club is a national nonprofit organization of approximately 625,000 members dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. Sierra Club's concerns encompass protecting surface water quality both nationally and locally. Preserving the health of the nation's waters has been a primary goal of Sierra Club since its founding in 1892. The Cumberland Chapter of Sierra Club has approximately 4,900 members in the Commonwealth of Kentucky.

9. Individual members of Sierra Club live, work, and recreate in and around the Ohio River, including in the area of the Mill Creek Station. Some members live in close proximity to the Mill Creek site, including as close as a few hundred yards away. Other Sierra Club members pass the Mill Creek Station regularly while engaged in recreational activities on the Ohio River, such as paddling. Sierra Club members' use and enjoyment of the River is harmed by LG&E's unauthorized discharges into the River and the resulting degraded water quality. This degradation affects both Sierra Club members' recreational interests and their livelihood, as some members rely on the Ohio River for commercial and business purposes. Maintaining the aesthetic beauty and ecological vitality of the Ohio River is crucial to a wide array of activities that occur on the River, many of which Sierra Club members participate in on a regular basis. Unauthorized discharges from the Mill Creek Station thus directly harm Sierra Club members. These members have a strong interest in ensuring that the River's

water quality permits its full use and appreciation and that their neighbors on the River are using this shared resource in a manner consistent with state and federal law.

10. Sierra Club members' injuries are traceable to the Mill Creek Station's illegal discharges, because the illegal discharges add pollution to the Ohio River that contributes to degradation of Ohio River water quality downstream of the plant.  Sierra Club members' interests have already been adversely affected by unauthorized discharges from the Mill Creek Station, and will continue to be negatively impacted by such discharges so long as LG&E continues to violate its permit.

11. The requested declaratory and injunctive relief mandating that LG&E comply with the Clean Water Act, as well as the imposition of civil penalties to deter future violations, will redress Sierra Club members' injuries. These injuries will not be redressed except by an order from this Court assessing civil penalties against LG&E and/or requiring LG&E to take immediate and substantial action to stop the illegal discharges into the Ohio River, and to comply with the other relief sought in this action.

12.  Defendant LG&E owns and operates the Mill Creek Station. LG&E is headquartered at 220 West Main Street in Louisville, KY, 40202. LG&E is incorporated in the Commonwealth of Kentucky.

## **LEGAL BACKGROUND**

13. The CWA is the principal federal statute enacted to protect the quality of the waters of the United States.  The stated objective of the CWA is "to restore and maintain the chemical, physical and biological integrity of the Nation's waters" by, among other things, achieving the goal of "eliminat[ing]" "the discharge of pollutants into the navigable waters."  33 U.S.C. § 1251(a).

14. Section 301(a) of the CWA, *id.* § 1311(a), provides that "the discharge of any pollutant . . . shall be unlawful" unless, in pertinent part, the discharge is made pursuant to and is authorized by a NPDES permit, as provided by section 402 of the Act, *id.* § 1342. A NPDES permit not only limits the amount of pollutants that can be discharged into navigable waters, it also requires that a discharger monitor and publicly report the amount of pollutants it discharges. NPDES permits are issued for fixed terms that may not exceed five years in length. *Id.* § 1342(b)(1)(B).

15. The CWA defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source." *Id.* § 1362(12).

16. The CWA defines "pollutant" to include, among other things, "solid waste," "chemical wastes," and "industrial . . . waste discharged into water." *Id.* § 1362(6).

17. The CWA defines "navigable waters" to mean "the waters of the United States." *Id.* § 1362(7).

18. The CWA defines "point source" to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, [or] channel . . . from which pollutants are or may be discharged." *Id.* § 1362(14).

19. The CWA provides that a State may establish its own permit program, and after receiving EPA's approval, may issue NPDES permits. *Id.* § 1342(b). EPA first approved Kentucky's NPDES program (the Kentucky Pollutant Discharge Elimination System program, or "KPDES") covering many of the waters of Kentucky, including the Ohio River, on September 30, 1983. *See* 48 Fed. Reg. 45,597 (Oct. 6, 1983).

20. Any affected citizen may commence a civil action against a defendant "who is alleged to be in violation of . . . an effluent standard or limitation" under the CWA citizen suit provision,

33 U.S.C. § 1365(a)(1). The term violation of "an effluent standard or limitation" includes any discharge of a pollutant that is not authorized by a NPDES permit. *Id.* §§ 1311(a), 1342, 1365(f)(6). The CWA citizen suit provision, *id.* § 1365(a), empowers the Court to enforce such an effluent standard or limitation and to impose any appropriate civil penalties under section 309(d) of the Act, *id.* § 1319(d). The action "may be brought . . . only in the judicial district" in which the alleged violation occurs. *Id.* § 1365(c)(1). Before commencing the action, the plaintiff must first give notice of its claims to the defendant and to federal and state government officials, and it may bring the action 60 days after notice is given. *Id.* § 1365(b)(1)(A).

## FACTUAL BACKGROUND

The Facility and Location

21. The Mill Creek Station is a coal-fired power plant located along the Ohio River at 14660 Dixie Highway, Louisville, KY, 40272, in Jefferson County. It began operation in 1972, and has an approximate generating capacity of 1,700 megawatts. It is owned and operated by Defendant LG&E.[1]

22. The Mill Creek Station contains a large coal ash impoundment that borders the Ohio River and abuts two creeks, Mill Creek and Pond Creek. The ash impoundment is unlined, and is 42.8 acres in size with an average depth of 27 feet.[2]

23. The ash impoundment receives wastewater from the coal plant which contains, among other substances, ash sluice water, boiler chemical cleaning waste waters, cooling water, reverse osmosis treatment waste, sump flows, natural gas system wastewaters, plant feedwater make-up treatment wastes, and storm water runoff from process, coal pile, limestone pile, and ash

---

[1] *See* KPDES Permit No. 0003221 Application, KPDES Permit Application Synopsis (May 2001).
[2] KPDES Permit No. 0003221 Application, Outfall Synopsis at 2 (May 2001).

treatment basin areas.[3] Collectively, these substances are referred to as "coal ash wastewater."

24. Coal ash wastewater such as that in the Mill Creek ash impoundment contains many toxic pollutants, including but not limited to: arsenic (a carcinogenic pollutant that causes heart problems, nervous system disorders, and, when present in drinking water, is also linked to miscarriages, stillbirths, and infants with low birth weights), mercury (a bio-accumulating poison that impairs brain development in children and causes nervous system and kidney damage in adults), selenium (long-term exposure to which can damage the kidney, liver, and nervous and circulatory systems), lead (a potent neurotoxicant that is highly damaging to the nervous system), and cadmium (a potential carcinogen and potent neurotoxicant pollutant that is highly damaging to the nervous system).

25. The Ohio River is one of the largest rivers in the United States and is a busy thoroughfare for commercial and recreational barge and boat traffic.

26. The Ohio River is the source of drinking water for more than three million people, including many who live near the Mill Creek Station in the Louisville area. It is also a popular destination for residents and tourists to fish, swim, and recreate in.

27. Under the CWA, KDEP must define its goals and expectations for a water body in part by designating appropriate water uses to be achieved and protected, in a manner that "protect[s] the public health or welfare, enhance[s] the quality of water and serves the purposes of" the CWA. 33 U.S.C. § 1313(c)(2)(A); *see also* 401 K.A.R. 10:026; 40 C.F.R. § 131.10. KDEP must establish water quality standards for waterbodies "taking into consideration their use and value for public water supplies, propagation of fish and wildlife, recreational purposes, and agriculture, industrial, and other purposes, and also taking into consideration their use

---

[3] *Id.*

and value for navigation." 33 U.S.C. § 1313(c)(2)(A). Water quality criteria are then set to protect those uses. *Id.* KDEP has designated the Ohio River for Warmwater Aquatic Habitat and Primary/Secondary Contact Recreation. Through such a designation, KDEP has indicated an expectation that the Ohio River is both suitable for full or partial body contact recreation and can support indigenous warm water aquatic life. 401 K.A.R. 10:001 § 1(67) and (85).

28. The CWA requires KDEP to develop lists of "impaired waters," or waters that are too degraded to meet the water quality standards set by the state. 33 U.S.C. § 1313(d). In 2010, KDEP listed the Ohio River segment surrounding the Mill Creek Station as impaired, *inter alia*, for mercury and fish consumption.

The Permitting History of Mill Creek

29. On December 24, 1975, LG&E was first granted a permit authorizing the discharge of pollutants to waters of the United States for the Mill Creek Station.

30. The 1975 permit has been renewed six times to date, most recently in 2002.

31. LG&E applied for its current permit in an application dated July 2, 2001.

32. Pursuant to its delegated authority under the CWA, 33 U.S.C. § 1342(b), KDEP granted LG&E's 2001 permit renewal request, and issued KPDES Permit KY0003221 ("2002 KPDES permit" or "permit") on May 6, 2002. The permit became effective on November 1, 2002.

33. On May 11, 2007, LG&E applied for renewal of the 2002 KPDES permit, which was set to expire on October 31, 2007. However, because KDEP has not yet acted on this renewal application, the 2002 KPDES permit has been administratively extended and remains in effect today.

34. The 2002 KPDES permit regulates discharges of pollutants to the Ohio River from the Mill Creek Station, specifying which wastewater streams may be discharged from which locations (defined as permitted "outfalls") and establishing effluent limitations and monitoring and reporting requirements for certain pollutants within those wastewater streams that Mill Creek Station is authorized to discharge.

35. Outfall 002 is located on the eastern bank of Ohio River at mile point 356.0. It is situated on the thin strip of land between the western side of the ash impoundment and the Ohio River. The ash impoundment and Outfall 002 are located on the northern portion of the Mill Creek facility's property.

36. The permit describes Outfall 002's discharges as "Combined wastewaters of ash pond overflow consisting of Units 1-4 bottom ash/fly ash sluices, Units 1-4 sumps, Unit 2 cooling tower blowdown (003), boiler metal cleaning wastes (006), noncontact cooling water, reverse osmosis treatment waste, pretreatment sump, plant feedwater make-up treatment waste, natural gas system wastewater, coal pile runoff, and storm water runoff from Units 1, 3, and 4 scrubbers, limestone crushing area, and secondary containment area for fuel tanks." 2002 KPDES Permit, Part I at I-2.

37. The permit further describes Outfall 002 as "an internal outfall that discharges to Outfall 001." 2002 KPDES Permit, Part I at I-2.

38. The 2002 KPDES permit cover page describes Outfall 002 as an internal outfall that "discharges to Outfall 001" with an "occasional direct discharge to the Ohio River at mile point 356.0." The permit fact sheet associated with the 2002 permit describes Outfall 002 using identical language. Permit Fact Sheet at 4.

39. The plain meaning of "occasional" is "occurring from time to time" or "irregular; infrequent." *The Am. Heritage Dictionary of the English Language* (5th ed. 2011).

LG&E's Discharges From Outfall 002

40. Upon information and belief, LG&E has discharged directly into the Ohio River from Outfall 002 almost daily since at least May 22, 2009, and in the absence of any corrective measures by LG&E to date, continues to discharge directly to the Ohio River on an almost daily basis.

41. Effluent from Outfall 002 contains significant levels of each of the toxic pollutants enumerated in ¶24, as well as other pollutants.[4] For example, the maximum mercury level for Outfall 002 reported in LG&E's 2007 Permit Renewal Application was 1.1 micrograms/L, a concentration that is more than 20 times higher than Kentucky's water quality criterion for fish consumption, 0.051 micrograms/L. 401 KY ADMIN. REGS. § 10:031 (2014).

42. LG&E's discharges of these pollutants from Outfall 002 to the Ohio River harm the river and the people who use and enjoy it, including members of the Sierra Club who live, work, and/or recreate in areas near the Mill Creek Generating Station.

## CLAIM FOR RELIEF

43. Sierra Club re-alleges and incorporates the allegations of all the preceding paragraphs of this Complaint as if fully set forth herein.

44. The Ohio River is a navigable water as defined in the CWA, 33 U.S.C. § 1362(7).

45. The Mill Creek Generating Station is a point source as defined in the CWA, 33 U.S.C. § 1362(14).

46. The 2002 KPDES permit provides that Outfall 002 is an "internal outfall" that discharges to Outfall 001.

---

[4] *See* KPDES Permit No. 0003221 Renewal Application, KPDES Form C, Part V (May 2007).

47. The 2002 KPDES permit at most authorizes from Outfall 002 of the Mill Creek Generating Station only an "occasional direct discharge to the Ohio River at mile point 356.0."

48. The Mill Creek Generating Station is discharging and has discharged mercury and other pollutants, as defined in the CWA, 33 U.S.C. § 1362(6), from Outfall 002 directly to the Ohio River on an almost continuous, daily basis since at least May 22, 2009. Sierra Club is unaware of any action by LG&E that would stop these discharges. Upon information and belief, these discharges will continue after the date of the filing of this Complaint.

49. LG&E's almost continuous, daily discharges from Outfall 002 directly to the Ohio River are not authorized by the 2002 KPDES permit. Consequently, LG&E has violated and is continuing to violate the CWA, 33 U.S.C. § 1311(a), on each day since at least May 22, 2009, for discharging pollutants without authorization in a NPDES permit. Therefore, under the CWA citizen suit provision, 33 U.S.C. § 1365, a civil action may be maintained against LG&E.

50. By committing the acts and omissions alleged above, LG&E is subject to an assessment of civil penalties pursuant to 33 U.S.C. §§ 1319(d) & 1365 and 40 C.F.R. § 19.4.

51. In a letter postmarked March 17, 2014, Sierra Club sent LG&E notice of the violations alleged in this claim for relief as required by 33 U.S.C. § 1365(b)(1). Sierra Club's notice letter is attached to this Complaint as Exhibit A.

52. Unless LG&E desists in its violations of 33 U.S.C. § 1311(a), Sierra Club, its members, and their communities will suffer irreparable harm.

53. Sierra Club has no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Sierra Club requests that this Court enter a judgment:

a) declaring that LG&E's almost continuous, daily direct discharges of pollutants from Outfall 002 of the Mill Creek Generating Station to the Ohio River are not authorized by KPDES permit KY0003221 and violate the CWA, 33 U.S.C. § 1311(a);

b) ordering that LG&E take all actions necessary to comply with the CWA, including ceasing all discharges that are not authorized by KPDES permit KY0003221;

c) assessing LG&E civil penalties under 33 U.S.C. §§ 1319(d) & 1365 and 40 C.F.R. § 19.4 not to exceed $37,500 per day for each violation of the CWA since May 22, 2009;

d) awarding Sierra Club its litigation costs and reasonable attorney fees incurred in prosecuting this action, pursuant to 33 U.S.C. § 1365(d); and

e) ordering such other relief as the Court may deem just and proper.

Dated: May 28, 2014.                                  Respectfully submitted,

s/Joe Childers
JOE F. CHILDERS (KY 11850)
JOE F. CHILDERS & ASSOCIATES
300 Lexington Building
201 West Short Street
Lexington, Kentucky 40507
Phone: (859) 253-9824
Fax: (859) 258-9288
Email: childerslaw81@gmail.com

THOMAS CMAR (IL 6298307)
SHANNON FISK (IL 6269746)
Earthjustice
5042 N. Leavitt Street, Suite 1
Chicago, IL 60625
Phone: (312) 257-9338
Fax: (212) 918-1556
Email: tcmar@earthjustice.org
Email: sfisk@earthjustice.org
*To be admitted pro hac vice*

12

KRISTIN HENRY (CA 220908)
LAURIE WILLIAMS (NY 4951117)
Sierra Club
85 Second Street, Second Floor
San Francisco, CA 94105-3441
Phone: (415) 977-5716
Fax: (415) 977-5793
Email: kristin.henry@sierraclub.org
Email: laurie.williams@sierraclub.org
*To be admitted pro hac vice*

Counsel for Plaintiff